THIRD DIVISION
December 8, 2010

No. 1-10-1664

| | | |
|---|---|---|
| *In re* DEANDRE D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Martha R. and Thomas G.), | ) | Honorable |
| | ) | Rena Marie Van Tine, |
| Respondents-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

The Cook County Public Guardian appeals the judgment of the circuit court terminating

the parental rights of Martha R. and Thomas G., the natural parents of nine-year old Deandre D.[1]

On appeal, the public guardian argues that the trial court erred in finding that termination of

parental rights was in Deandre's best interests. For the reasons set forth below, we affirm the

circuit court.

## I. BACKGROUND

Deandre's family came to the attention of the Illinois Department of Children and Family

Services (DCFS) in April 2005, when Deandre's mother, Martha R. gave birth to a son, Jonathon

---

[1]In the same hearing, the circuit court also terminated the parental rights of Martha R. and Carlos

Valladares, parents of Deandre's half-sister, Xiommy R. Issues regarding Xiommy R. are not addressed in this

appeal.

T., who tested positive for intrauterine cocaine exposure. Martha R., who also tested positive for cocaine, admitted to using cocaine and marijuana about one week before giving birth. Deandre, Jonathon T., and their half-sister Xiommy R. were placed under a safety plan in the home of a maternal uncle and his wife. However, the natural parents violated the safety plan by taking the children out of the maternal uncle's care without DCFS permission. It appears that the family received DCFS services from May 2005 until June 2006, but were then unable to be located. The family again came to the attention of DCFS in January 2007, when Martha R. gave birth to her fourth child, Alexander E., who also tested positive for cocaine. Alexander E. was placed in foster care, but Martha R. was not forthcoming about the whereabouts of her other three children.

On January 25, 2007, the State filed a petition for adjudication of wardship and a motion for temporary custody of the children and issued a child protection warrant since the children's location was unknown. Approximately five months later, in May 2007, Deandre's 17-year-old maternal aunt brought Deandre and Xiommy to DCFS. The aunt, who was pregnant and a runaway ward, said that she had been caring for the two children for about two weeks but could no longer do so. An adjudication hearing was held on July 10, 2007, and the court found that Deandre was in an injurious environment and at a substantial risk for physical injury as a result of abuse or neglect inflicted upon him by a parent. The court also entered a disposition order adjudicating Deandre a ward of the court and placing him under DCFS guardianship, because his parents were unfit and unable or unwilling to care for him. After a permanency planning hearing on July 20, 2007, the court entered a goal of return home pending a status hearing. At that time, Deandre had no contact with his parents and his parents's whereabouts were unknown.

A permanency planning hearing was held on June 6, 2008, at which Martha R., who was then in custody in Cook County jail, appeared. Afterwards, the court entered a permanency goal of substitute care pending court determination on termination of parental rights based on its finding that the natural mother had not made substantial progress toward reunification. On December 29, 2008, the State filed a supplemental petition for appointment of a guardian with right to consent to adoption. The petition alleged that Deandre's parents were unfit in that they (1) failed to maintain a reasonable degree of interest, concern or responsibility for Deandre's welfare (750 ILCS 50/1(D)(b) (West 2006)); (2) deserted Deandre for more than three months preceding the commencement of the termination proceedings (750 ILCS 50/1(D)(c) (West 2006)); (3) were habitual drunkards and/or addicted to drugs other than those prescribed by a physician for at least one year immediately prior to commencement of the termination proceedings (750 ILCS 50/1(D)(k) (West 2006)); (4) failed to make reasonable efforts to correct the conditions which were the basis for Deandre's removal from them and/or failed to make reasonable progress toward his return to within nine months after the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(ii)(West 2006)) or within any nine-month period after the finding of adjudication (750 ILCS 50/1(D)(m)(iii)(West 2006)); and (5) evidenced an intent to forego parental rights by failing for a period of 12 months to visit Deandre, communicate with Deandre or DCFS, although able to do so, or maintain contact with or plan for the future of Deandre, although physically able to do so. The petition also alleged that terminating parental rights and appointing a guardian with the right to consent to adoption would be in Deandre's best interest because he had resided with his foster parent since October 2008, and she wanted to adopt him.

A third permanency hearing was held on January 8, 2009, after which the permanency goal remained substitute care pending court determination on termination of parental rights.

In the meantime, on May 11, 2007, DCFS placed Deandre and Xiommy in the same foster home where Alexander was residing. However, in October 2008, all three children were removed from that home because there were allegations of corporal punishment, Alexander, an infant, had suffered a fractured arm, and the foster parent would not take Xiommy to her counseling sessions. DCFS then placed Deandre, Xiommy, and Alexander in a second foster home with Heather Camren. Shortly thereafter, Camren reported to DCFS that Deandre kicked walls, banged his head, and hit her and a daycare worker. In January 2009, Deandre was psychiatrically hospitalized for a week after becoming aggressive toward Camren and his siblings. He was hospitalized again for two weeks in May 2009 after threatening to choke himself. In August 2009, Camren asked DCFS to remove Deandre from her home. She reported that he used her cell phone without permission, stayed up all night, took items that did not belong to him at church, and kicked her in the groin. On August 12, 2009, Deandre was hospitalized in Streamwood Behavioral Health Care Center for observation, where he remained until October 28, 2009. DCFS then placed Deandre at Hephzibah Children's Home, a residential treatment facility, where he currently resides.

On May 10, 2010, the trial court held a hearing on the State's supplemental petition for appointment of a guardian with right to consent to adoption for Deandre and his half-sister

Xiommy. Neither of Deandre's parents was present at the hearing.[2] The court's hearing was bifurcated, with the court first addressing the State's allegations that Deandre's parents were unfit. Prior to hearing evidence, the trial court noted that the guardian *ad litem* had requested a continuance because Deandre was not yet in a pre-adoptive placement and there was "no real timeline on when he is going to a preadoptive placement." The court denied this request finding that "it would not be in Deandre's best interest to continue the case *** [because] it would ultimately just delay his permanency rather than assist with it." The trial court also granted the State's request to withdraw ground (k) of the petition, alleging that Deandre's parents were unfit because they were habitual drunkards and/or addicted to drugs.

At the fitness hearing, the State presented as a witness Lillia Reyes, a caseworker from Child Link, an adoption and foster care services agency. Reyes testified that she developed service plans for Deandre's parents in June 2007, December 2007, June 2008, December 2008, and June 2009, listing tasks and services Deandre's parents needed to complete in order to regain custody of Deandre, including drug treatment and counseling and having unsupervised visits with him. Reyes testified that with each service plan, the parents' rating on their progress toward that goal was unsatisfactory. She further testified that since June 2007, the parents' whereabouts were unknown until Martha R. was found in Cook County jail in January 2008, awaiting trial on a charge of delivery of a controlled substance near a school. Reyes testified that she spoke with Martha R. in February 2008 regarding services she would need to complete in order to be

---

[2] Deandre's father was defaulted from the case in April 2008 for failing to appear, and counsel for Deandre's mother was granted leave to withdraw on July 8, 2009, due to lack of client contact.

reunified with her son, but she did not complete any of those services. Reyes testified that Martha R. was released from jail in August 2008 and had a few visits with Deandre, but had no visits between September 29, 2008, and December 29, 2008, the date the State filed its petition to terminate parental rights. She also stated that there was no contact between Deandre and his father between June 2008 and December 2008. After hearing from Reyes, the trial court found that the State had met its burden of proof by clear and convincing evidence in showing that Deandre's parents were unfit pursuant to sections 1(D)(b), (D)(c)(D)(d) and (D)(m) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(c), (D)(d), (D)(m)(West 2006)) , since they had not maintained any degree of interest, concern, or responsibility as to the child's welfare.

The trial court then proceeded to determine whether termination of parental rights was in Deandre's best interests. Prior to commencing the hearing, the trial court again noted the guardian *ad litem*'s pending motion for a continuance of Deandre's case but stated that "in light of the new law where the parents can come back in and basically vacate a termination order in the trial court, I think it [*sic*] would be hard pressed to continue the case because I think that there is a better chance of Deandre actually getting adopted if the parental rights–if it was shown that it was in his best interests to terminate parental rights. However, I don't know what the evidence is, so I am keeping an open mind as to whether to continue the case in the midst of the best interest."

At the best interest hearing the State's first witness was Heather Camren, Deandre's former foster parent, who testified about her desire to adopt Deandre's half-sister, Xiommy. While testifying about activities she engages in with Xiommy, Camren talked about Xiommy's

relationship with Deandre, stating that Xiommy visits Deandre on Tuesday evenings and that the two "are very, very close."  The State's next witness was Sandra Hess, clinical coordinator at Hephzibah Children's Association and supervisor of Deandre's caseworker, Matt Connolly, who was on vacation and could not be in court.  Hess testified that Deandre had resided at Hephizibah for a little over six months and had been involved in three incidents at school that resulted in "unusual incident reports."  First, Hess said that on February 18, 2010, Deandre became overwhelmed in class, was running around, and needed to be removed from the classroom by a behavioral interventionist.  Subsequently, Deandre "needed to be contained because he was trashing [the behavioral interventionist's] room."  On March 17, 2010, Deandre again became overwhelmed at school, began to act aggressively and had to be removed by the behavioral interventionist.  On April 12, 2010, after a similar incident, Deandre was suspended from school.

Hess stated that Deandre was undergoing a psychological evaluation, which was going slowly because Deandre would become overwhelmed and could only work with the evaluator for about 30 minutes at a time.  Hess said that although Deandre had previously been diagnosed with bipolar disorder, the psychologist thought that he more likely had posttraumatic stress disorder but was reluctant to give a diagnosis until he completed all of the testing, which would likely take two more weeks.  Hess said that it was unclear whether Deandre would return to Heather Camren's home in the future because, "at this point, I can see that we wouldn't want to place Deandre with younger children, and she does have younger children in the home.  It doesn't–and they visit regularly.  They have a lot of contact."  Upon further questioning from the State about returning Deandre to Camren's home if he made significant progress, Hess said, "I'm not sure

that would be possible.  That would be good that he could–we hope that he would make tremendous progress.  Often what we see is that when the siblings are together, they enact the abusive situations they've had.  He needs a good deal more capacity to be aware of his insights.  You know, he doesn't know how he's feeling."  When asked if Deandre should live with his half-sister, Xiommy, Hess said "they should always have contact, but I don't know that they should live together.  Really, right now with Deandre around younger children, he's very explosive, he gets very regressed, he's overwhelmed, he gets angry at them, and he gets aggressive with them."  She further stated that Deandre would probably need placement in a residential setting for one or two years but would not need a residential program into adulthood and would likely go to foster care within the next three years.

In response to a question from the guardian *ad litem* about whether termination of parental rights would have an adverse effect on Deandre, Hess said, "Oh, wow, the--I have to make an opinion here on this one, about whether he's better off with or without.  I'll tell you he feels abandoned either way.  He doesn't feel like people want him.  He doesn't–he speaks to his own mother being dead, which is kind of his way to explain why she hasn't wanted to see him. *** [H]e's obviously not going to live with either parent, and that's–he hasn't even had contact with them, so... *** I can say *** we'll make it okay for Deandre whatever the decision is.  I think that either way there's therapeutic work to do, and we'll do it."  Hess also stated that Deandre is very close to his siblings and that his paternal grandmother and uncle are very important to him. With regard to Deandre's paternal uncle, Hess  stated, "[i]t's possible there's potential placement there.  But they have been involved sporadically over the years, so we kind

of want to be sure that they could be a family for him. ***" Hess said that Deandre's caseworker had been meeting with Deandre's paternal uncle, who, along with Deandre's paternal grandmother, would like to be identified as people to visit him and maintain family connections with him. She said that in order for them to be considered as a potential adoptive placement, they would need to first become licensed foster parents, which would require specialized training, but that they had not yet come forward to do so. Further, she said that there is some concern with placing Deandre with his paternal uncle because the uncle has a two-year-old child.

The State rested, and the public guardian renewed its motion for a continuance of the best interest hearing for Deandre. In response, the court stated that "I find it would not be in the best interest of Deandre to continue the case any further for a best interest hearing in that I believe his best chance for actually getting adopted would be if, in fact, his parental rights were terminated sooner rather than later. So at this point, the motion is denied." After hearing arguments from the State and the guardian *ad litem*, the trial court first found that it was in Xiommy's best interest to terminate parental rights because she had no contact with either of her parents and she was living with Camren, who wanted to adopt her. Then, with regard to Deandre, the court stated as follows:

> "As to Deandre, also I find it is in his best interest to terminate the parental rights of both the mother as well as the father. This is not an easy decision in that Deandre is not in a preadoptive placement. However, he himself emotionally and psychologically has terminated his parental rights for lack of a better word. He considers his mother dead, and he does not know his father. He feels very abandoned. However, he does have ties

to not only Heather Camren, whose placement may or may not be possible in the future, but he also does have some ties to his biological family, the paternal side of his family, his uncle as well as his grandmother, who are also possible placement options. Hopefully[,] they will come forward, and knowing that his parental rights have been terminated, be willing to make more of a commitment in terms of undergoing the specialized training and also to provide a permanent place for him to grow up in.

Also, given that the law has recently changed as well, the parents do have the option of coming forward if several years down the line he is still not in a pre-adoptive placement and it would be in his best interest to vacate this termination order, given the changes in the law, it would be in my power to do so. However, neither parent has really been part of his life in any meaningful way. He is a child that has very high needs, and he needs a home where he can really find permanency.

This is probably the oldest termination petition on the call, and it is because I have continued the case from time to time. The case has been set multiple times for hearing on the State's supplemental petition. I did this in the hopes that prolonging the case would help him towards permanency and hopefully getting a preadoptive home. However, that has not worked for him. So I'm hoping that with this more final determination that his parental rights have been terminated, that this would encourage other people to come forward, whether they be relatives or nonrelatives, but knowing that he does not have any legal parents, they may be more inclined to actually come forward and provide a good home for him and allow him to be adopted in the home."

-10-

The court then terminated the parental rights of Deandre's parents and appointed the DCFS guardianship administrator as guardian with right to consent to adoption. On June 9, 2010, the public guardian filed a timely notice of appeal from the trial court's order denying its motion for a continuance of the best interest hearing and of the order terminating the parental rights of Deandre's parents.

## II. ANALYSIS

On appeal, the public guardian argues that the trial court's order terminating the parental rights of Deandre's parents should be reversed because in making its best interest decision the trial court did not consider all of the statutory best interest factors listed in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2008)) (the Act) and erred in giving consideration to the possibility that the court could subsequently vacate its termination order and reinstate parental rights pursuant to section 2-34 of the Act (705 ILCS 405/2-34 (West Supp. 2009)). Alternatively the public guardian argues that the trial court's finding that it was in Deandre's best interest to terminate his parent's parental rights is against the manifest weight of the evidence.

The Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 2008)) provides a two-step process for the involuntary termination of parental rights. In re C.W., 199 Ill. 2d 198, 210 (2002). First, the State must prove that the parents are unfit as defined in section 1(D) of the Adoption Act. 750 ILCS 50/1(D) (West 2008); In re C.W., 199 Ill. 2d at 210. Because the termination of parental rights constitutes a complete severance of the parent-child relationship, proof of parental unfitness must be clear and convincing. In re C.N., 196 Ill. 2d 181, 208 (2001).

Only if the court makes a finding of unfitness will the court go on to consider whether it is in the best interest of the child to terminate parental rights. 705 ILCS 405/2-29(2) (West 2008); In re C.W., 199 Ill. 2d at 210. Because the circuit court is in the best position to assess the credibility of witnesses, a reviewing court may reverse a circuit court's finding of unfitness only where it is against the manifest weight of the evidence. In re C.N., 196 Ill. 2d at 208. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident. In re C.N., 196 Ill. 2d at 208.

Here, the trial court found Deandre's parents unfit for failing to maintain a reasonable degree of interest, concern, or responsibility as to Deandre's welfare (750 ILCS 50/1(D)(b)(West 2008)); deserting Deandre for more than three months preceding the commencement of the adoption proceeding (750 ILCS 50/1(D)(c)(West 2008)); continuous substantial neglect of Deandre (750 ILCS 50/1(D)(d)(West 2008)); and failing to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent or to make reasonable progress toward the return of the child to the parent within nine months after an adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 (750 ILCS 50/1(D)(m)(West 2008)). The public guardian does not challenge this finding.

Once a trial court finds a parent unfit under one of the grounds of section 1(D) of the Adoption Act, the next step in an involuntary termination proceeding requires the court to consider whether it is in the best interests of the child to terminate parental rights, pursuant to section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 2008)). The State has the burden of proving by a preponderance of the evidence that termination is in the child's best interests. See In

1-10-1664

re D.T., 212 Ill. 2d 366. The court's determination in this respect lies within its sound discretion, especially when it considers the credibility of testimony presented at the best interests hearing; that determination will not be reversed unless it is against the manifest weight of the evidence or the trial court has abused its discretion. See In re G.L., 329 Ill. App. 3d 18, 25 (2002). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." In re Arthur H., 212 Ill. 2d 441, 464 (2004).

Section 1-3(4.05) of the Act requires a trial court to consider a number of factors for termination within "the context of the child's age and developmental needs." These include:

"(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

-13-

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for

stability and continuity of relationships with parent figures and with siblings

and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS

405/1-3 (4.05) (West 2008).

The public guardian contends that the trial court erred because it found that it was in

Deandre's best interests to terminate parental rights without considering all of the best interest

factors listed in section 1-3(4.05) in the Act. In particular, the public guardian asserts, the trial

court heard no evidence regarding: (1) Deandre's sense of attachments, including where he

actually feels love, attachment, and a sense of being valued, as opposed to where adults believe

he should feel love, attachment and a sense of being valued; (2) Deandre's wishes and long-term

goals; and (3) the preferences of the people available to care for Deandre.

First, the public guardian contends that at the age of nine Deandre was old enough to

express his wishes and long-term goals. Further, the public guardian asserts, because Deandre

had no pre-adoptive home at the time of the hearing, the court was surmising that Deandre's will

feel love and attachment to a home and a foster parent that might materialize in the future,

without actually asking him about where he actually feels loved. With regard to the preferences of persons available to care for Deandre, the public guardian asserts that the trial court simply speculated that Deandre's paternal relatives or Heather Camren might be interested in adopting Deandre after he completes his time at Hephzibah, despite the absence of any evidence to support that supposition. The public guardian notes that Camren was called to testify regarding her desire to adopt Deandre's half sister, Xiommy, but was never asked whether she would consider having Deandre return to her home. The public guardian asserts that the trial court also speculated about whether Deandre's paternal relatives might be willing to provide a home for Deandre following termination of parental rights, rather than hearing from those people directly to determine their preferences regarding caring for Deandre. The public guardian contends that the trial court's decision that it was in Deandre's best interest to terminate parental rights without hearing evidence regarding these factors is grounds for reversal. We disagree.

First, we note that the trial court is not required to explicitly mention each factor listed in section 1-3(4.05) when rendering its decision. In re Jaron Z., 348 Ill. App. 3d 239, 262-63 (2004). In fact, the court need not articulate any specific rationale for its decision, and a reviewing court need not rely on any basis used by a trial court below in affirming its decision. In re Jaron Z., 348 Ill. App. 3d at 262-63. Here, the trial court heard from Sandra Hess, a clinical coordinator at Hephzibah, regarding Deandre's attachments to his siblings and his paternal relatives and the possibility of a placement with one of those relatives in the future. Further, in issuing its order, the trial court addressed Deandre's psychological and emotional well-being and stated that it was aware that placement with Camren or Deandre's paternal relatives may or may

not be possible. While it is true that Deandre and his paternal relatives did not testify, we do not agree with the public guardian's assertion that the trial court failed to give adequate consideration to the statutory best interest factors. Therefore, we do not find a basis for reversal on this ground in making it decision that it was in Deandre's best interest to terminate parental rights.

Alternatively, the public guardian argues that the trial court's finding that it was in Deandre's best interests to terminate parental rights was against the manifest weight of the evidence, because the evidence presented weighed against terminating parental rights, was neutral to the best interest determination, or weighed in favor of postponing a termination decision. First, the public guardian argues, Deandre's actual attachments weigh against terminating parental rights because Deandre is close to his paternal grandmother and uncle and termination of the parental rights of his natural mother and father would also terminate the rights of those relatives. See In re Adoption of S.G., 401 Ill. App. 3d 775, 787 (2010) (holding that "when a natural parent's parental rights and interests are completely severed by the termination of parental rights, the rights and interests of the natural parent's relatives are also completely severed"). Further, the public guardian notes that the evidence at the hearing showed that Deandre is very close to his half-sister Xiommy and that if parental rights are terminated, there is no guarantee that Deandre will continue to have contact with her. Similarly, the public guardian contends that the seventh best interest factor, the child's need for permanency, including stability and continuity of relationships with parent figures, siblings and other relatives, weighs against termination of parental rights again because of his close relationship with his half-sister and paternal relatives, which could be jeopardized by termination of parental rights.

-16-

The public guardian contends that other best interest factors weigh neither for nor against termination of parental rights. First, the residential treatment facility where Deandre resides and will likely continue to reside for the next year or so meets his needs for physical safety and welfare and would continue to do so, regardless of whether parental rights are terminated and, therefore, should be assessed neutrally. Similarly, the public guardian asserts that given that Deandre is not currently in a pre-adoptive placement, the second best interest factor, development of Deandre's identity, the sixth best interest factor, Deandre's community ties, and the eight and ninth best interest factors, the uniqueness of every family and child and the risks attendant to entering and being in substitute care, have neutral impact on the best interest determination. Therefore, the public guardian argues, because no best interest factors weigh in favor of termination and several best interest factors were not considered by the trial court, the best interest finding is against the manifest weight of the evidence and should be reversed. Further, the public guardian asserts that because Deandre is in a residential placement, where he will likely remain for another year or two, there was no need to terminate parental rights at this time, and Deandre would be better served if DCFS located an appropriate placement for him first and provided supportive services to prepare him for family life.

Although we agree with the public guardian that the ideal situation would be for Deandre to be in a pre-adoptive home, we do not find that the trial court erred in finding that it was in his best interests to terminate his parents' parental rights. The evidence presented at the May 2010 best interest hearing showed that Deandre's mother has a substantial and serious history of drug abuse and has not made any progress in obtaining services necessary to reunite with Deandre

since the case came into the system. Neither parent has maintained an independent parental relationship with Deandre or shown any interest, concern or responsibility for his welfare. They have, as the trial court stated, "been out of the picture" for several years. The trial court heard from Sandra Hess, who testified that Deandre feels abandoned by his parents, speaks of his mother as being dead, and has had no contact with his father. She also testified that Deandre is close to his paternal relatives and that there is some possibility of placement with them in the future. Based on this testimony and the court's consideration of Deandre's psychological and emotional well-being the court determined that terminating the parental rights of Deandre's parents was in his best interest because it was more likely to lead to a permanent placement with an adoptive family than would a decision to continue the parental rights. We do not find that this conclusion was against the manifest weight of the evidence. Therefore, we find that the trial court did not err in terminating parental rights.

Lastly, the public guardian contends that the trial court erred by giving consideration to the possibility that the parental rights of Deandre's parents might be reinstated in the future, pursuant to section 2-34 of the Act (705 ILCS 405/2-34 (West Supp. 2009)). Section 2-34 permits DCFS to petition for reinstatement of parental rights three years after those rights have been terminated in cases involving children, 13 years or older, who are not in a placement likely to achieve permanency, where it is in the child's best interest that parental rights be reinstated, and the parents want parental rights reinstated and are "currently appropriate to have rights reinstated." 705 ILCS 405/2-34(1) (West Supp. 2009). Pursuant to section 2-34(8), the Act is repealed four years after its effective date of August 21, 2009.

1-10-1664

The public guardian first argues that because Deandre will turn 13 years old on March 7, 2014, after section 2-34 expires on August 21, 2013, the reinstatement provision of the Act cannot apply to him and should not have been considered by the trial court. More importantly, the public guardian asserts, the best interest factors listed in section 1-3(4.05) of the Act were the only factors the court could consider when terminating parental rights, and no consideration should have been given to the possibility that Deandre's parents' rights might be reinstated in the future. Because we find that the trial court's finding that it was in Deandre's best interests to terminate respondent's parental rights based on the statutory factors listed in section 1-3(4.05) of the Act was not against the manifest weight of the evidence, we need not address this issue.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court.

Affirmed.

NEVILLE and STEELE, JJ., concur.