2020 IL App (2d) 190814-U
No. 2-19-0814
Order filed April 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* M.J.M., a minor | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| | ) | No. 18-JA-158 |
| | ) | |
| (The People of the State of Illinois, Petitioner-Appellee, v. Alexis M.B., Respondent-Appellant). | ) | Honorable |
| | ) | Christopher B. Morozin, |
| | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1  *Held*: Appellate counsel's motion to withdraw is granted as there were no issues of arguable merit regarding the trial court's findings that respondent mother is unfit and that it is in the minor's best interests for her parental rights to be terminated.

¶ 2  Respondent, Alexis B., appeals the trial court's rulings that (1) she was an unfit person under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018) (Act)) and (2) the termination of her parental rights was in the best interests of M.J.M., her three-year-old son. Respondent's appointed appellate counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *In re Alexa J.*, 345 Ill. App. 3d 985 (2003), asserting that there

are no issues of arguable merit to be raised on respondent's behalf. For the following reasons, counsel's motion is granted.

¶ 3                                I. BACKGROUND

¶ 4     When M.J.M. was born in February 2017, respondent tested positive for marijuana. At that time, respondent and M.J.M.'s father, Marcus M., had been found unfit to parent their two older children, who were in the care of the Department of Children and Family Services (DCFS).[1] On February 16, 2017, the trial court held a shelter care hearing and found probable cause existed that M.J.M. was neglected due to its prior finding of unfitness with respect to M.J.M.'s siblings. The court awarded DCFS temporary custody of M.J.M., and he was placed in the same traditional foster home as his older brothers.

¶ 5     On May 18, 2017, M.J.M. was adjudicated neglected, and respondent was ordered to cooperate with DCFS and comply with the term of the service plans. The service plans contained several tasks she was required to complete, including participating in domestic violence services, substance abuse services, mental health services, and parenting services, maintaining safe housing and stable income, complying with random weekly drug screens, and visiting regularly with M.J.M.  For the next 16 months, respondent had no contact with M.J.M. or the agency. Despite being sent four service plans, she did not participate in any of the required services.

¶ 6     On September 10, 2018, the State filed an eight-count petition to terminate respondent's parental rights. Following several continuances, the trial court held the unfitness hearing on June

_____

[1] Marcus M. was adjudicated M.J.M.'s biological father on May 11, 2017. He is not a party to this appeal. On November 6, 2018, the trial court terminated respondent's parental rights to M.J.M.'s older siblings. See *In re M.K.M. and M.D.M.*, 2019 IL App (2d) 181002-U.

20, 2019, where it heard testimony from the family's caseworker, Lacey Norton, and admitted several documents into evidence. On July 16, 2019, the court found respondent unfit on six counts: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare; (2) failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child for the nine-month period following the adjudication of neglect; (3) failure to make reasonable progress toward the goal of return home for the nine-month period following the adjudication of neglect; (4) failure to visit the minor for a period of 12 months; (5) failure to communicate with the minor or agency for a period of 12 months; and (6) failure to maintain contact with or plan for the future of the minor for a period of 12 months.

¶ 7     The court then proceeded to the best-interests hearing on August 29, 2019. After listening to testimony from Norton and admitting two best-interests reports into evidence, the court found that it was in M.J.M.'s best interests to terminate respondent's parental rights and granted DCFS the power to consent to adoption.

¶ 8     Respondent filed a notice of appeal on September 19, 2019, and appellate counsel was appointed to represent her. On March 9, 2020, counsel filed a motion to withdraw pursuant to *Anders*, 386 U.S. 738, and *In re Alexa J.*, 345 Ill. App. 3d 985. Counsel asserts that there are "no legal non-frivolous questions" and submitted a memorandum of law in support of the motion, in which she asserts that she "thoroughly scrutinized the record, and reviewed both the finding of unfitness and the best interest determination." Counsel served respondent with a copy of the motion and memorandum, and we advised respondent that she had 30 days to respond. That time has now passed, and she had not responded. We review counsel's request below.

¶ 9                                      II. ANALYSIS

¶ 10    Before we begin to analyze counsel's motion, we must address the timeliness of our decision. Pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), we must issue our decision within 150 days of the filing of the notice of appeal unless there has been "good cause shown." Respondent filed her notice of appeal on September 19, 2019. Thus, the 150-day period to issue our decision expired on February 17, 2020. We note that counsel filed an initial motion to withdraw pursuant to *Anders*, which was denied on February 3, 2020, with instructions to discuss whether the State's termination petition complied with statutory requirements. Counsel's present motion to withdraw rectifies the issue and sufficiently presents *any* issue that could conceivably argued on appeal. See *Alexa J.*, 345 Ill. App. 3d at 989-990 (denying a request to withdraw for failure to identify any issue that could conceivably be raised on appeal). We thus find good cause for issuing our decision after the 150-day deadline.

¶ 11    In accordance with *Alexa J.*, appellate counsel has identified two potential issues. The first potential issue is whether the trial court's finding of the six counts of unfitness was against the manifest weight of the evidence. The second potential issue is whether the court's decision to terminate respondent's parental rights was against M.J.M.'s best interests. Counsel discusses the evidence in the record and explains why she believes these issues lack merit. Having reviewed the record, we agree with counsel's assertions and address them below.

¶ 12    The Juvenile Court Act of 1987, 705 ILCS 405/1 *et seq*. (West 2018), provides a two-stage process for involuntary termination of parental rights. The trial court initially holds an unfitness hearing, during which the State must prove the parent is unfit, as defined in section 1(D) of the Adoption Act, by clear and convincing evidence. *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010). If the court finds the parent to be unfit, the court then conducts a best-interests hearing to determine, by the preponderance of the evidence, whether it is in the best interests of

the child to terminate the unfit parent's rights. *Id.* We will reverse a trial court's unfitness or best-interests determination only if they are against the manifest weight of the evidence. *In re S.H.,* 2014 IL App (3d) 140500, ¶¶ 28, 34. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006).

¶ 13                                    A. Unfitness Determination

¶ 14    Section 1(D) of the Adoption Act provides various grounds under which a parent may be found unfit. Here, the trial court found respondent unfit on six of those grounds: (1) failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare; (2) failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child or (3) reasonable progress toward the return of the child to the parent of the child during any 9-month period following the adjudication of neglect; [2] and failure (4) to visit the child, (5) to communicate with the child or agency, or (6) to maintain contact with the plan for the future of the child, although physically able to do so. See 750 ILCS 50/1(D)(b), m(i), m(ii), n(1)(i), n(1)(ii), and n(1)(iii) (West 2018). Counsel addresses each of the grounds in her memorandum of law and argues no meritorious arguments could be made with respect to all six counts.

---

[2] Counsel cites *In re Tiffany M.*, 353 Ill. App. 3d 883, 890 (2004) for the proposition that "[s]ubsections (m)(i) and (m)(ii) are examined only after the first nine months following the adjudication of neglect." Counsel's assertion misstates the law. The State may denote "*any* nine-month period following adjudication" to show a lack of progress or efforts. See 750 ILCS 50/1(D)(m) (West 2018) (Emphasis added.). This does not impact our analysis, but we note this for any future cases counsel addresses to this court.

¶ 15    We begin by examining the court's determination that respondent failed to show a reasonable degree of interest, concern, or responsibility for M.J.M., pursuant to section 1(D)(b) of the Adoption Act. Because section 1(D)(b) of the Adoption Act is written in the disjunctive, a parent's failure to maintain a reasonable degree of interest or concern or responsibility in her child will support a finding of unfitness. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). In determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for her child's welfare, courts consider a parent's efforts to visit and maintain contact with the child, as well as other indicia of interest, such as inquiries into the child's welfare. *In re Adoption of Syck*, 138 Ill. 2d 255, 278-79 (1990). Courts may also consider the completion of service plan objectives as evidence of interest, concern, or responsibility. *Jaron Z.*, 348 Ill. App. 3d at 259. Courts also consider a parent's conduct in the context of the circumstances in which it occurs and will consider the parent's efforts which show interest in the child's well-being, regardless of whether those efforts were successful. *Daphnie E.*, 368 Ill. App. 3d. at 1065. A parent is not fit merely because she has demonstrated some interest or affection toward the child; rather, the interest, concern, or responsibility must be objectively reasonable. *In re B'Yata I.*, 2014 IL App (2d) 130558-B, ¶ 31.

¶ 16    Here, the State elicited testimony from the family's caseworker and introduced documentation into evidence during the unfitness portion of the termination proceeding that undoubtedly demonstrates that respondent had no contact with either M.J.M. or the agency shortly after he was born in February 2017 until at least September 2018, when the termination petition was filed. The record shows that respondent was aware that in order to have a visit with M.J.M., she needed to only pass one weekly drug screen, yet she did not either take, or pass, any weekly drug screens in 16 months. The record also demonstrates that respondent failed to participate in, let alone complete, any of the required services identified in the service plans. Although there was

evidence that respondent was incarcerated at various times throughout the sixteen months, which may have impacted her ability to complete some services, it is no excuse for her complete disregard to remain in contact with her son or the agency. In light of this evidence, we agree that counsel could not make a meritorious argument that the trial court's finding that respondent is unfit pursuant to section 1(D)(b) of the Adoption Act is against the manifest weight of the evidence. Because the State needs to prove only one ground of parental unfitness by clear and convincing evidence (See *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 30), we need not address the other five grounds found by the trial court.

¶ 17                    B. Best-Interests Determination

¶ 18    Counsel also asserts that any argument regarding the best-interests determination would likewise be frivolous because the trial court considered all the appropriate statutory factors in terminating respondent's parental rights. We agree.

¶ 19    When considering whether termination of parental rights is in a child's best interests, the trial court must consider a number of factors within the context of the child's age and developmental needs including: (1) the physical safety and welfare of the child; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05)(a)-(j) (West 2018). At a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *In re M.C.*, 2018 IL App (4th) 180144, ¶ 34.

¶ 20    Here, the evidence considered at the best-interests phase of the termination hearing establishes that M.J.M. has been in the same foster home since his release from the hospital in February 2017 and that respondent has not seen or visited with him since then. His foster parents have adopted both of his older brothers and have expressed a desire to adopt him as well. All of M.J.M.'s needs are met by the foster parents, whom he calls "mommy" and "daddy." The family has moved into a more diverse neighborhood and attend a racially diverse church to keep ties with M.J.M.'s cultural background. The foster parents help M.J.M.'s development through "a wonderful daycare" and age-appropriate activities like gymnastics and swimming. The record also makes clear that M.J.M. has a strong bond with his foster parents as they are the only parents he has ever known. Given this record, we agree with appellate counsel that a non-frivolous argument cannot be made that the trial court's finding that it is in M.J.M.'s best interests that respondent's parental rights be terminated is against the manifest weight of the evidence.

¶ 21                                III. CONCLUSION

¶ 22    After our own careful review of the record, we agree with appellate counsel that it would be frivolous to argue that it was against the manifest weight of the evidence for the trial court to find respondent unfit or that termination of her parental rights was not in M.J.M.'s best interests. Thus, we grant counsel's motion to withdraw and affirm the judgment of the circuit court of Lake County.

¶ 23    Affirmed.