NOTICE
Decision filed 11/15/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240781-U

NO. 5-24-0781

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* LAYLANI L., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-JA-214 |
| | ) | |
| Lily L., | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Evidence amply supported the circuit court's findings that the respondent was unfit and that the minor's best interests required terminating her parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    The respondent, Lily L., appeals the circuit court's orders finding her an unfit parent and terminating her parental rights. Her appointed appellate counsel concludes that there is no meritorious issue that could support an appeal. Accordingly, counsel has filed a motion to withdraw, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified the respondent of this motion, and this court has provided her with ample opportunity to respond. However, she has not done so. After considering the record on appeal and

1

counsel's motion and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     In September 2019, the Department of Children and Family Services (DCFS) received a call that the minor was frequently left with caregivers for days at a time. On September 6, 2019, the State filed a petition alleging that the minor was abused and neglected. The State alleged that, in addition to frequently leaving the minor with caregivers for extended periods, the respondent had "failed to cooperate with Intact services" and had substance-abuse issues that affected her ability to parent. The circuit court found probable cause to remove the minor from the respondent's custody. Following a November hearing, the court found the minor to be neglected.

¶ 5     DCFS thereafter prepared the initial service plan requiring the respondent to address substance-abuse issues, parenting skills, and her overall education and mental health. The initial permanency report showed that, despite having an "attitude," the respondent had completed inpatient substance-abuse treatment at Chestnut Health Systems.

¶ 6     The caseworker, Nakia Glover, opined that the respondent had a limited understanding of proper parenting, not realizing the risk to the minor from leaving her with "unknown individuals" or by the respondent leaving her residence without a proper care plan in place. Although the respondent had a history of mental illness, she had not participated in any mental health services since February 2020. The respondent had, however, registered to obtain her GED.

¶ 7     There followed 11 permanency hearings and resulting orders, with the permanency goal eventually changed to substitute care pending termination of parental rights and then to adoption. Permanency reports filed in April and June 2021 noted that, although the respondent had

completed inpatient substance-abuse treatment, she was suspected of using drugs again and had failed to complete drug tests.

¶ 8    In April 2023, the minor's father, who was incarcerated, signed an irrevocable consent to adoption. In June of that year, the State petitioned to terminate the respondent's parental rights, alleging that she had made neither reasonable efforts nor reasonable progress toward the minor's return during any nine-month period between March 30, 2020, and the petition's filing.

¶ 9    At the subsequent hearing, Glover testified that the minor came into care in September 2019 for inadequate supervision after her grandparents reported that the respondent would leave the minor with different caregivers for varying amounts of time. Often the caregivers would return the minor to the grandparents, reporting that they did not know the respondent's whereabouts.

¶ 10    Glover testified that the service plans were reviewed every six months at administrative case review (ACR) meetings, but the respondent never attended these meetings. The respondent was generally uncooperative in updating information about her housing, employment, and services. Glover did not have an address for the respondent so that she could verify housing. Glover had heard the respondent was living with her grandmother. However, Glover made several unannounced visits there but never saw the respondent.

¶ 11    Glover rated the respondent unsatisfactory on mental health treatment, as she had never completed a mental-health assessment or follow-up treatment. Although she had completed substance-abuse treatment, the respondent frequently missed drug tests or refused to complete them.

¶ 12    Although the respondent had completed a parenting class, her "capacity for her parenting [the minor] would be concerning." During visitations, which were held at a McDonald's, the

respondent would often fail to interact with the minor. She would frequently go to get food, leaving the minor with the visitation supervisor.

¶ 13　The respondent was initially allowed weekly visitation, but her attendance was inconsistent. Visitation was reduced to once per month, but her participation remained inconsistent. The respondent did not call Glover to check on the minor's welfare. To Glover's knowledge, the respondent did not provide tangible support or give the minor anything of value. Glover opined that the respondent was in essentially the same position as when the case began, having made no tangible progress toward the minor's return.

¶ 14　The respondent testified that she was never aware of any ACR meetings; if she had known about them, she would have attended. She then testified that mailed notices would arrive after the meeting was scheduled to take place.

¶ 15　The respondent said that she had been employed a few times, most recently with her boyfriend's mother, babysitting another child. She had not, however, given Glover details about that job. The respondent stated that she lived full-time with her grandparents, only occasionally spending time at friends' houses. She had "completed Chestnut," the inpatient substance-abuse treatment, and continued to work with the agency, which prescribed medication and provided counseling.

¶ 16　According to the respondent, she had completed her GED and parenting classes. She did not believe she had missed any drug tests "in months." She had not tested positive for anything except marijuana. Her recent visits had been inconsistent because she was unable to confirm in time. She was required to confirm within 24 hours but, by the time she got off work at 7 p.m., it was too late. She had a driver's license and a car and had recently arranged to buy a house.

4

¶ 17    The respondent believed that she had "mostly complied" with her service plan. She acknowledged that it had taken too long and that she was just beginning to put in the effort that she should have when she was younger. She believed that she could be a good parent to her child.

¶ 18    The court noted that, because the respondent was only 17 years old when the case began, she had been given extra time to complete the requirements of her service plan. However, although she had made efforts to improve her parenting skills, she had not made reasonable progress, and she was in much the same place as when the case began. Accordingly, the court found that the respondent had failed to make either reasonable efforts or reasonable progress toward the goal of returning the minor to her and found the respondent to be unfit.

¶ 19    The court then proceeded to the best-interests portion of the proceeding. Glover testified that the minor had been placed with her great-aunt since October 2019, when she was eight months old. When Glover observed the minor in this environment, she appeared to be bonded to her foster parents and comfortable in the environment. Glover had no concerns about the minor's safety, she had no special needs and was doing well in school. The foster parents had signed permanency commitments.

¶ 20    Glover opined that it would not be detrimental to the minor to terminate the respondent's parental rights. Indeed, given that the minor had been in the same placement since she was eight months old and was doing "extremely well" there, uprooting her might well be detrimental. The respondent testified that she loved her daughter and believed that maintaining a relationship with her was important. She did not know if that would be possible if the court terminated her parental rights.

¶ 21    The guardian *ad litem* recommended that the respondent's parental rights be terminated. The court found it in the minor's best interests to terminate the respondent's parental rights. The

court noted that the case had been pending for almost five years and the minor required permanency. The court found it in the minor's best interest and terminated respondent's parental rights. The respondent timely appealed.

¶ 22                                    ANALYSIS

¶ 23     The respondent's appointed counsel concludes that there is no reasonable argument that the circuit court erred in finding respondent unfit and terminating her parental rights. We agree. Initially, we note that a proceeding to terminate a party's parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) occurs in two stages. *In re Deandre D*., 405 Ill. App. 3d 945, 952 (2010). First, the State must establish that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2022). At the unfitness hearing, the State bears the burden of proving, by clear and convincing evidence, that the parent is unfit to have a child. See *In re D.W.*, 214 Ill. 2d 289, 315 (2005).

¶ 24     Here, the evidence showed that, although the respondent completed some tasks in the service plan, she made little overall progress. She completed substance-abuse treatment, finished her GED, and took a parenting course. However, she continued to miss drug tests or test positive for marijuana. She failed to maintain steady employment. She frequently missed visitations and, when she did attend, Glover continued to be concerned about the respondent's demonstrated parenting skills. The respondent admitted that much of progress came late in the nearly five-year process as only then had she begun to take tasks as seriously as she should have done earlier. Thus, the court's finding that she had not made reasonable progress was supported by the evidence.

¶ 25     Counsel further suggests that there is no meritorious basis to challenge the circuit court's finding that terminating respondent's parental rights was in the minor's best interests. Once a

parent is found unfit, the circuit court moves on to the second stage of termination proceedings, which involves a determination of whether it is in the minor's best interest to terminate parental rights. At this stage, the State must demonstrate, by a preponderance of the evidence, that the termination is in the minor's best interest. *In re D.T.*, 212 Ill. 2d at 366-67.

¶ 26    Glover testified that the minor was placed with her great-aunt. She appeared to be bonded with the foster parents, who were willing to adopt her. Her needs were being met, and she was doing well in school. Thus, the court did not err in finding that the minor's best interests required terminating the respondent's parental rights, freeing the minor for adoption.

¶ 27                                          CONCLUSION

¶ 28    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 29    Motion granted; judgment affirmed.