2020 IL App (2d) 200078-U
No. 2-20-0078
Order filed May 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* M.S., A Minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No.   18-JA-51 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Jay S., Respondent- | ) | Mary Linn Green, |
| Appellant). | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's fitness and best-interests findings were not contrary to the manifest weight of the evidence or an abuse of discretion.  Affirmed.

¶ 2    Respondent, Jay S., appeals from the trial court's orders finding him unfit to parent his son, M.S., and terminating his parental rights.  We affirm.

¶ 3                                 I. BACKGROUND

¶ 4    M.S. was born on December 25, 2017.  On February 10, 2018, respondent and M.S.'s mother were hospitalized after overdosing on heroin.  By February 25, 2018, respondent was in rehabilitation in Florida, and M.S.'s mother's location was unknown.  M.S. was taken into protective custody and placed with a relative.  On February 28, 2018, the State filed a three-count

neglect petition.  Respondent, who had retained counsel, waived his right to a hearing, and DCFS was granted temporary guardianship and custody.  Ultimately, M.S. was placed with a maternal great uncle.

¶ 5     A DCFS report prepared in April 2018 reflected that respondent's last-known address was an addiction recovery house in Florida.   The caseworker reported that she had communicated with respondent's attorney, sent a letter with agency contact information to respondent at the Florida address, and left respondent voicemails asking that he call the caseworker when discharged from treatment to discuss services moving forward.  Respondent had not communicated with the caseworker or completed an intake assessment.  Services recommended for respondent at that time included: a substance-abuse assessment and compliance with recommendations resulting therefrom; a mental health evaluation; random drug screenings; compliance with agency recommendations; and maintenance of regular communication and updated contact information with the agency.

¶ 6     On May 23, 2018, by agreement of the parties, M.S. was adjudicated a neglected minor. Respondent was not present, but was represented by counsel.  At that time, respondent had still not communicated with DCFS, returned calls, or completed an integrated assessment, although M.S.'s mother called him during one of her visits with M.S.  DCFS noted that "collateral reports" indicated that respondent was residing in a halfway house in Florida.

¶ 7     On July 3, 2018, *respondent was present* and represented by counsel at the disposition hearing.  At that time, the court noted that the case would be continued to assess if, in the interim, the parents made reasonable efforts.  The court instructed, "[t]o get reasonable efforts you have to work with your caseworker, you have to get your services, and you have to correct whatever conditions caused the case to come in."

¶ 8    On December 3, 2018, at a permanency review hearing, respondent was not present, but was represented by counsel. He had not maintained contact with the caseworker, obtained either a substance-abuse or mental-health assessment or evaluation, visited with M.S., or completed an integrated assessment. At the hearing, respondent's counsel represented that respondent was engaged in counseling in Arizona. The court found that respondent had not made reasonable efforts.

¶ 9    On April 3, 2019, the next permanency review hearing, respondent's counsel requested a continuance, asserting that he had texted his client about attending the hearing, had not heard back, but had "no reason not to expect him" to appear. The court denied the motion to continue. The hearing evidence reflected that respondent had still not contacted DCFS or completed any assessments, nor had any visits with M.S. The court found that respondent had not made reasonable efforts or progress. The State asked that the court change the goal, but respondent's counsel asked for the opportunity to secure his client's presence. The court did not change the goal.

¶ 10    Five months later, on September 27, 2019, the State filed an amended petition to terminate respondent's parental rights, asserting that he was unfit on four bases: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to M.S.'s welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failure to make reasonable efforts to correct the conditions that caused M.S. to be removed during a nine-month period after the adjudication of neglect, specifically, for the periods July 3, 2018, to April 3, 2019, and October 1, 2018, to July 1, 2019 (750 ILCS 50/l(D)(m)(i) (West 2018)); (3) failure to make reasonable progress toward the return of M.S. to him during a nine-month period after an adjudication of neglect, specifically, for the periods July

3, 2018, to April 3, 2019, and October 1, 2018, to July 1, 2019 (750 ILCS 50/1(D)(m)(i) (West 2018)); and (4) depravity (750 ILCS 50/1(D)(i) (West 2018)).

¶ 11    That same day, the court held a permanency review hearing.  Respondent continued to have no contact with DCFS, had not engaged in services, and had not had any visitation.  Respondent's counsel represented that respondent was in Arizona, attempting to obtain sobriety.  The court found that respondent failed to make reasonable efforts or progress and changed the goal to substitute care pending court determination of termination of parental rights.

¶ 12    The unfitness hearing was scheduled for November 8, 2019.  The day before the hearing, respondent's counsel moved for a continuance, asserting that respondent "requested permission for movement from his probation officer to travel to Illinois," that the request was denied and "his probation officer advised he would not be granted permission for movement."  Respondent asserted that he had maintained contact with his counsel and wished to be present for the termination hearing.  The State objected, noting it was not clear when respondent requested permission for movement, whether permission was likely to be granted in the future, and, in any event, that the child's interest in permanency was now paramount.  After hearing further argument, the court denied the motion, stating: "the interests of the child outweigh those of the parent at this point, particularly given that he's had little to no involvement at all in this case.  If it had been otherwise, I might see fit to grant the motion.  But for our purposes today the motion is denied."

¶ 13                              A. Fitness Hearing

¶ 14    On November 8, 2019, the fitness hearing commenced.  The court took judicial notice of various documents, including respondent's criminal convictions in case numbers 2013-CF-3109, 2015-CF-2600, and 2017-CF-1470, all involving Class 4, drug-related felonies.

¶ 15    Lauren Chorobik, a caseworker, testified that M.S. was not placed with respondent due to substance abuse concerns. Chorobik confirmed that, when respondent appeared at the July 3, 2018, disposition hearing, she provided him with her contact information. Nevertheless, she had otherwise had no contact with him. Although she left respondent voicemails and tried to reach him at the Florida rehabilitation facility, she was not able to reach him and he did not return her calls. She initially tried calling him every week, but, as the case progressed, she tried every month. In addition, every six months, she performed a "diligent search," which involves a computer search through DCFS, using all of respondent's identifying information. The last diligent search was performed in August 2019, but the last known address continued to show him as being in Florida. There had been no visits between respondent and M.S., respondent had not inquired about or provided for M.S., and Chorobik was never contacted about respondent obtaining services or any progress that respondent may have made concerning services. Respondent never provided any releases or other proof of the treatment he was allegedly receiving. Chorobik laid foundation for the introduction of service plans and the integrated assessment.

¶ 16    At the close of evidence, respondent's counsel renewed his motion to continue, to allow respondent the opportunity to appear. The court noted that another date for hearing would be required, so the attorneys could present arguments and, if respondent appeared at the next hearing, it would re-open the proofs. Per respondent's counsel's request, the court specifically ordered that respondent appear to testify at the next hearing.

¶ 17    Two months later, on January 10, 2020, the hearing continued. Respondent did not appear. Counsel requested a continuance, which was denied. (M.S.'s mother was present and signed a specific consent to adopt). The court found respondent unfit on all four bases alleged in the State's petition. In sum, the court noted that respondent had not communicated with DCFS, had completed

no services, had not had any visitation, and had not inquired about or provided for M.S. As to depravity, the court noted that it was successfully raised and remained unrebutted. Specifically, the court noted that respondent had at least three Class 4 felony convictions, all concerning possession of a controlled substance, one within the last five years, in 2013, 2015, and 2017.

¶ 18                          B. Best-Interests Hearing

¶ 19    The case proceeded to the best-interests hearing. Micayla Moeller testified that she is a foster care supervisor and has supervised this case since October 2018. Specifically, Moeller supervises Chorobik, who had observed M.S. in his foster placement with his maternal great uncle. M.S. has been in his current placement around two years, since February 2018. He is "absolutely" bonded with his placement and is secure there. The foster parent has met all of M.S.'s needs, and is committed to maintaining M.S.'s relationships with his siblings. Because M.S. is placed with family, he is included in all family celebrations and continues to see his mother and extended relatives.

¶ 20    In contrast, M.S. has no relationship with respondent and, other than one contact in court in July 2018, he has never spent time with respondent. Respondent has not demonstrated that he can care for M.S., in a parental role or financially, nor has he ever inquired about M.S. According to Moeller, it was the agency's position that M.S.'s current foster parent should provide permanency and was "absolutely" capable of doing so. The foster parent was present and, while he did not testify, he thanked the court for "doing what [it's] doing."

¶ 21    After hearing argument, the trial court found that the State had met its burden and proved that it would be in M.S.'s best interests to terminate respondent's parental rights. Respondent appeals.

¶ 22                          II. ANALYSIS

- 6 -

¶ 23    Respondent argues first that the trial court erred in determining that he was unfit with regards to counts I-III of the petition for termination.  He essentially argues that the State's evidence reflected only that it had not had contact with him and that, "despite the considerable resources of the State," virtually no effort was made to determine what services respondent had obtained in Florida or Arizona.  We reject these arguments.

¶ 24    Proceedings to terminate parental rights are governed principally by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)) (the Act) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)).  The Act provides a two-step process for the involuntary termination of parental rights.  *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010).  First, the State must prove that the parent is unfit by clear and convincing evidence.  *Id.*  Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) lists the grounds under which a parent can be found unfit.  *In re Tiffany M.*, 353 Ill. App. 3d 883, 889 (2004).  Second, if the court makes a finding of unfitness, the court then considers whether it is in the best interests of the minor to terminate parental rights.  *Deandre D.*, 405 Ill. App. 3d at 953.  The State has the burden of proving by a preponderance of the evidence that termination is in the minor's best interests.  *Id.*  We will reverse a finding of unfitness only where it is against the manifest weight of the evidence, that is, where the determination is unreasonable.  *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008).  We will reverse a best-interests finding only where it is against the manifest weight of the evidence.[1]  *N.B.*, 2019 IL

_____

    [1] Respondent erroneously states that the reviewing standard is abuse of discretion, citing *In re M.S.*, 302 Ill. App. 3d 998, 1003 (1999).  In 2005, however, our supreme court clarified that the correct standard is manifest weight of the evidence.  See *In re Austin W.*, 214 Ill. 2d 31, 51-52 (2005), abrogated on other grounds by *In re M.M.*, 2016 IL 119932, ¶ 28; *In re N.B.*, 2019 IL App

App (2d) 180797, ¶ 43.  An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court.  *In re Joseph J.*, 2020 IL App (1st) 190305, ¶ 26.  Section 1(D)(m) of the Adoption Act contains separate grounds, any one of which can serve as a basis for a finding of unfitness.  750 ILCS 50/1(D)(m) (West 2018); see also *In re B'Yata I.*, 2014 IL App (2d) 130558-B, ¶ 30 (grounds for finding unfitness under the Adoption Act are independent, and reviewing court may affirm trial court's judgment if the evidence supports any one of the grounds alleged).

¶ 25    Here, although the State alleged and the court found unfitness on *four* grounds, respondent challenges only *three*.  The challenges he raises, as summarized above, are simply meritless. Respondent was present in court in July 2018, was instructed by the court that he had to cooperate with DCFS and obtain services, and, further, he was provided contact information for the caseworker.  He failed to complete any services, communicate with DCFS, provide the agency with any releases or information concerning his services, or inquire about or visit his child. Moreover, the record reflects that he was in communication with his counsel, who was present on his behalf at every hearing and who, presumably, could have presented information and evidence on respondent's behalf.  Therefore, the record establishes respondent's knowledge of these proceedings and the requirement that he cooperate and participate in them.  Any challenges to the court's findings on counts I-III must fail.

¶ 26    Critically, however, even setting aside the first three counts, respondent does not challenge the court's finding of unfitness based on depravity.  Indeed, he *concedes* that the State presented sufficient evidence to establish unfitness based on depravity.  Specifically, there exists a rebuttable

---

(2d) 180797 at ¶ 43.

presumption that a parent is depraved if the parent has been criminally convicted of at least three felonies and at least one of these convictions took place within five years of the filing of the motion to terminate parental rights. 750 ILCS 50/1(D)(i) (West 2018). Here, the trial court took judicial notice of respondent's three felony convictions, two of which were within five years of the State's motion to terminate. Thus, there clearly existed a rebuttable presumption of respondent's depravity. *In re A.M.*, 358 Ill.App.3d 247, 253 (2005). Although, "[b]ecause the presumption is rebuttable, a parent is still able to present evidence showing that, despite [his or] her convictions, [he or] she is not depraved[,]" (*In re Shanna W.*, 343 Ill. App. 3d 1155, 1166 (2003)), and even though the court ordered him to appear at the next unfitness hearing date, respondent here never presented evidence to *rebut* the presumption of unfitness due to depravity.

¶ 27    We reject respondent's argument that he could not rebut the presumption and was, therefore, prejudiced by the court's denial of his motion to continue the hearing due to probation restrictions. See *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999) (to establish that the court abused its discretion in denying a motion to continue, the complaining party must show prejudice). He concedes that the court allowed for his appearance at a second court date after the hearing commenced, but asserts that "once the motion was denied, it was impossible to know what could have happened." We disagree. The first day of the unfitness hearing consisted only of the State's evidence and argument by counsel. The court ordered respondent to appear at the next hearing date, expressly stating that he should appear to testify and that, if he appeared, proofs could be re-opened. Two months passed between the hearing dates and, yet, respondent did not appear or ultimately present any evidence through his counsel to rebut the presumption. At no time did respondent suggest alternative dates or provide a more detailed explanation as to when he requested permission to travel, whether and how he could obtain permission, or when he would

likely be able to appear. Indeed, on multiple occasions, his own attorney expected his appearance and then stated that he had no explanation for respondent's failure to appear. Given respondent's complete lack of communication and participation in this case overall, the court did not abuse its discretion in denying the request for continuance. In summary, as we may affirm the unfitness finding if the evidence supports any one of the grounds alleged (*B'Yata I.*, 2014 IL App (2d) 130558-B, ¶ 30), the trial court did not err in finding respondent unfit.

¶ 28 Next, we reject respondent's argument that the State failed to prove that it was in M.S.'s best interests to terminate his parental rights. Respondent essentially argues that the evidence was insufficient because the State's sole witness did not have direct knowledge of M.S.'s relationship with the foster parent and merely supervised the person who had direct knowledge. In addition, he notes that the foster parent did not testify. He asserts, "there was no evidence presented to suggest that it is in the best interests of M.S. that the State's motion be denied. By the same token, there was little evidence to suggest that it is in M.S.'s best interests that [respondent's] rights be terminated." We disagree.

¶ 29 At the best-interests stage, the court "focuses upon the child's welfare and whether termination would improve the child's future financial, social[,] and emotional atmosphere." *In re D.M.*, 336 Ill. App. 3d 766, 772 (2002). "[A]t a best[-]interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The court must consider the following factors in making a best-interests determination: (1) the physical safety and welfare of the child; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments, including where the child feels love, attachment, and security; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including

the need for stability and continuity of relationships with parent figures, siblings, and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 30    Here, contrary to respondent's assertions, all of the evidence presented reflected that it was in M.S.'s best interests for parental rights to be terminated. Respondent seems to miss that the absence of any evidence reflecting that it would *not* be in M.S.'s interest to terminate his parental rights is exactly the issue. In other words, the evidence was totally one-sided in favor of termination. There was literally no evidence to suggest that placing M.S. with respondent would be possible. Respondent and M.S. have no relationship, other than a biological one, there was no evidence that respondent could financially or otherwise care for or meet M.S.'s needs, or that he had any interest in his son's well-being.

¶ 31    In contrast, regardless of whether the DCFS supervisor testified to the observations made directly by the caseworker, the record as a whole reflected that M.S. had been placed with his foster parent almost his entire life, he was bonded with that placement, and he was placed with a family member that met his needs, preserved sibling and maternal relationships, and included him in extended family gatherings. The foster parent did not testify, but was present at the hearing, which reflects at least some investment in M.S.'s well-being. We simply could not possibly conclude on this record that the trial court erred in determining that termination of respondent's parental rights is in M.S.'s best interest.

¶ 32                                  III. CONCLUSION

¶ 33    For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

¶ 34    Affirmed.