**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210508-U

Order filed March 3, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* Y.W., C.W. & D.H., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Minors | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | Appeal Nos. 3-21-0508 |
| | ) | 3-21-0509 |
| Petitioner-Appellee, | ) | 3-21-0510 |
| | ) | Circuit Nos. 18-JA-26 |
| v. | ) | 18-JA-27 |
| | ) | 18-JA-28 |
| J.H., | ) | |
| | ) | Honorable Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence supported the trial court's finding that respondent was unfit and that terminating respondent's parental rights was in the best interest of the children.

¶ 2    Respondent, J.H., appeals from an order finding her unfit and terminating her parental rights. She challenges the trial court's finding that she was an unfit parent as well as its decision to terminate her parental rights. We affirm.

## I. BACKGROUND

Respondent is the mother of three minor children, Y.W., C.W., and D.H. The children came into care when the minor, D.H., was born substance exposed to cocaine and respondent made suicidal statements with the children in the car. The service plan required respondent to participate in a substance abuse evaluation, obtain a psychological evaluation, stay sober, and attend drug screenings. The case closed on September 5, 2019, after respondent completed three clean drug tests. However, the State moved to reopen the case when respondent's fourth drug screening tested positive for the presence of cocaine.

On September 26, 2019, the court reopened the case. The court ordered respondent to submit to weekly drug screenings and to cooperate with the agencies. The court also required the agencies to complete an unannounced visit to respondent's home.

The Center for Youth and Family Services (CYFS) and the Court Appointed Special Advocate (CASA) filed two status reports. Both reports indicated that respondent failed to cooperate with the agencies. In addition, respondent failed to appear at the required drug screenings.

On November 7, 2019, the court entered a permanency order requiring respondent to cooperate with the agencies and to complete drug tests.

Next, CYFS and CASA filed new status reports. The reports showed that respondent only appeared for two of the five required drug tests. One drug screening showed a positive result for the presence of marijuana. The other test returned a negative result. Although respondent allowed CYFS to perform two home visits, she did not allow CASA to perform a home visit. Respondent also failed to answer the CASA caseworker's phone calls.

¶ 9        On December 19, 2019, respondent failed to appear in court for a status hearing. The State moved for the court to find respondent unfit. The court entered an order finding respondent unfit and made the children wards of the court. The court ordered the children's removal from respondent's home and appointed the Department of Children and Family Services (DCFS) as the guardian *ad litem* (GAL) for the children.

¶ 10       On January 15, 2020, CYFS filed a status report. The children were removed from respondent's home and placed with their maternal great-uncle Leroy M. and his wife Trina M. Trina failed the DCFS placement clearance due to a past conviction and was required to complete a waiver before she could live in the home with the children. Leroy supported the children and cooperated with the agency by enrolling the children in school, attending doctor visits, and ensuring the children's safety and wellbeing. The agency could not report on respondent's compliance with all of her drug screenings other than her failure to appear at two of the screenings and one positive test for alcohol.

¶ 11       On February 25, 2020, CYFS filed a permanency report. CYFS required respondent to receive individual therapy through CYFS. It also required respondent to perform four drug tests per month. Since November 2019, respondent failed to complete 7 of the 12 scheduled drug screenings. She tested negative for all substances in the tests she completed, except she tested positive for alcohol in one of the tests. Respondent completed a drug assessment prior to losing custody of the children. However, CYFS required a second drug abuse assessment due to respondent's positive drug screening for cocaine. According to the permanency report, respondent visited the children at Leroy's home two to four times per week for at least three hours per visit.

¶ 12       On March 11, 2020, CYFS filed another permanency report. Respondent failed to make satisfactory progress and reasonable efforts toward the goal of reunification. Respondent also

- 3 -

tested positive for synthetic marijuana on February 20, and failed to appear at the February 28, 2020, drug test.

¶ 13 On March 12, 2020, the court entered a permanency order finding the agencies had made reasonable efforts. However, the court found that respondent failed to make reasonable efforts to achieve the permanency goal.

¶ 14 On March 27, 2020, CYFS filed a status report. Respondent did not communicate with the caseworker as to her current residence. Respondent visited the children at Leroy's home three days per week from 4 p.m. to 7 p.m. Respondent arrived late to 7 of the 12 visits during that period. She also failed to appear at 3 of the 12 scheduled visits. The caseworker witnessed some of the visits and observed respondent showing kindness and appropriate parenting skills. Respondent did not complete the required substance abuse evaluation. Respondent was on a waitlist for individual counseling. CYFS also referred respondent to complete parenting classes.

¶ 15 On September 9, 2020, CYFS filed a permanency report. Respondent still failed to make satisfactory progress and reasonable efforts toward the goal reunification. Respondent failed to cooperate with the agency. Respondent did not answer calls or text messages from the agency. Respondent was unsuccessfully discharged from individual therapy after missing multiple sessions. Respondent failed to appear or complete all 17 of her drug tests from the period of February 28, 2020, through August 19, 2020. Respondent also did not complete her substance abuse assessment. Since June 2020, respondent consistently visited her children once a week.

¶ 16 On September 21, 2020, the State filed a petition for termination of respondent's parental rights. The State later filed an amended petition on September 23, 2020. In relevant part, count I of the petition alleged that respondent was unfit in that she failed to make reasonable progress

toward the return of the children during the nine-month period of December 19, 2019, to September 19, 2020.

¶ 17 On January 20, 2021, CYFS filed a best interest report. The children lived with their great-uncle Leroy. Leroy's home presented no safety concerns for the children. Leroy accepted the children as his own. Leroy provided the children's basic needs for food, shelter, clothing, medical, and emotional needs. The children were active and playful in Leroy's home. They also shared a strong bond with Leroy. Leroy attended church with the children and went on vacations. The agency had no concerns with the placement. CYFS recommended terminating respondent's parental rights.

¶ 18 As to respondent, the best interest report noted that she failed to appear or service was denied for drug testing since February 20, 2020 (nearly a year). Respondent completed a substance abuse evaluation on December 10, 2020. Respondent failed to successfully complete individual counseling due to her lack of attendance. Respondent also failed to maintain consistent contact with CYFS regarding her housing. Respondent was a "no call/no show" for 11 of her weekly visits for the period.

¶ 19 On March 10, 2021, CYFS filed a best interest report addendum. The addendum indicated that respondent completed a drug test on January 29, 2021, which showed negative results. Respondent attended one visit with her children on February 3, 2021, but failed to attend visits on February 10 and 17. Respondent also failed to comply with visitation rules. She appeared at Leroy's home for an unscheduled visit; Leroy did not allow her into the home.

¶ 20 On March 26, 2021, the State filed a supplemental petition for termination of parental rights. Specifically, count IV of the supplemental petition added an additional ground for

termination. It alleged that respondent was unfit in that she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare.

¶ 21    On March 26, 2021, CYFS filed another best interest addendum. The addendum indicated that respondent contacted the agency to discuss visitation and to schedule a child and family team meeting with the agency. The agency scheduled the meeting, but respondent failed to attend.

¶ 22    On May 10, 2021, respondent failed to attend a hearing in court and the court continued the matter.

¶ 23    On June 9, 2021, CYFS filed another best interest hearing report. Respondent failed to provide the agency with any other completed drug tests since her negative test result in January 2021. Respondent informed the agency that she called CYFS about contacting the counseling department but failed to provide CYFS with any other detail about being on a waitlist for counseling. Respondent continually failed to provide the agency with consistent contact regarding her residence. Since January 2021, respondent inconsistently visited her children. She missed four visits in January, two visits in February, and her visits in March. In April, her visitation schedule changed to one visit per month. She failed to appear for her visit in April but did attend her monthly visit in May and June.

¶ 24    On October, 22, 2021, the court held a hearing on the State's petition to terminate respondent's parental rights.[1] At the fitness phase, the caseworker Michelle States testified. She acted as caseworker from October 2020 until the time of the hearing (about one year). Since the case opened, respondent did not consistently stay in contact with the agency. During the "life of the case," respondent did not consistently cooperate with the agency. Respondent did not

---

[1]The report of proceedings filed on appeal only contains the transcripts from this hearing. The record does not contain transcripts from any other hearing.

consistently complete drug tests. States received the results from respondent's latest drug test on the morning of the hearing. Respondent tested positive for the presence of cocaine. Respondent did not complete counseling. To her knowledge, respondent had consistent housing during the "life of the case," but respondent did not always inform States of her housing. Respondent also did not consistently visit the minors "for the life of the case."

¶ 25     On cross-examination, States testified that respondent visited the minors once a month in May, June, July, August, and September of 2021. During States' time as the caseworker, respondent completed three drug tests. Respondent failed to appear at two drug tests that were scheduled during the month of the hearing on the petition to terminate her parental rights. Respondent told States she missed one of the drug tests due to work, and the other test she failed to take because "her hair was done, so she wasn't able to complete the hair follicle." Respondent informed States that she was employed, but never provided States with any information or proof of employment.

¶ 26     Respondent testified. When the pandemic started (around March 2020), she attended virtual visits with the children once a week. Respondent claimed she attended all scheduled visits. Respondent continued to participate in individual counseling. However, she stopped attending when her twin daughters died at birth on September 1, 2021. Respondent was on bedrest due to the pregnancy. She reached out to the agencies involved "constantly" to discuss her case. According to respondent, States rarely answered her calls. The two only spoke once or twice, and States was unavailable for some months because she was on maternity leave. In the summer of 2020, Leroy told respondent that he would not allow visits at his home. Since then, she could not "see them or talk to [the children]." As a result, she only saw her children once a month at the agency. Respondent did not call the children. Respondent failed to complete her drug tests because

she "was working, and [she] just was inconsistent at that time, if I'm being honest." Despite her recent positive test for cocaine, respondent denied using drugs. Respondent completed a substance abuse evaluation, attended individual therapy, and completed a parenting course. Respondent now lived in a two-bedroom apartment. She was employed and current on her rent and utilities. She believed that she maintained a reasonable degree of interest, concern, and responsibility toward her children.

¶ 27        Following the evidence, the State argued that respondent failed to maintain a reasonable degree of concern regarding the children. The State noted that the case had been pending for nearly three years. During that time, respondent consistently failed to comply with the service plan. Specifically, respondent failed to consistently appear for drug tests, keep in contact with the caseworkers, and visit the children. Therefore, the State asked the court to find respondent unfit. The State did not specifically argue that respondent was unfit for failing to make reasonable progress toward the goal of reunification.

¶ 28        The GAL made a similar argument. The GAL specifically asked the court to adopt and consider the reports submitted by the agencies during the course of the case. The GAL argued that those reports provided an accurate statement of which services were offered to respondent and her failure to complete those services adequately.

¶ 29        Ultimately, the court found that respondent failed to address her substance abuse problem. In addition, the court found that respondent failed to stay in consistent contact with the agency and complete services. The court concluded that "based upon the evidence that I've received today and heard today, review of the reports, I feel that you're in no better position today than you were when this case opened." The court found that the State met its burden and proved its case "on the [petition to terminate parental rights] that was filed on March 26, 2021, Count IV against [respondent]."

The court did not explicitly mention whether the State proved the petition it filed on September 23, 2020, which alleged that respondent failed to make reasonable progress toward the goal of reunification.

¶ 30    The cause proceeded to the best-interests phase the same day. States testified. The children's foster parents met their basic needs of food, shelter, clothing, medical, and emotional needs. The children shared a strong bond with their foster parents. They had strong ties with the community where they were placed. The foster parents attended church with the children and volunteered at the community garden. The foster parents were willing to adopt the children. States did acknowledge that the foster mother was not currently living in the home. She had been charged with prostitution in the 1980s and required a waiver from the agency for the children to be placed at the home. DCFS completed the waiver, but the agency planned to monitor the home for six months before consenting to adoption. The children told States that they wished to be adopted by their foster parents.

¶ 31    Respondent testified that her children expressed their desire to return to her home.

¶ 32    After hearing the evidence and arguments, the court found that only one statutory factor weighed in favor of respondent. Specifically, the children's desire to live with their mother. The court found that every other factor favored allowing Leroy to adopt the children. As a result, the court terminated respondent's parental rights and set the permanency goal to adoption.

¶ 33    The court's adjudication order shows that the matter was heard on the "Amended petition of 09/23/2020 & Supplemental petition of 03/26/21." The form order shows a checkmark that the petition "is proved by clear and convincing evidence. See transcript for detailed findings." The order did not specify whether the court had found that the State had proven both counts alleged in its petitions.

¶ 34        On October 25, 2021, the court entered a dispositional order terminating respondent's parental rights. The order showed that the court found the State proved count I of the petition to terminate parental rights filed on September 23, 2020, and count IV of the supplemental petition to terminate parental rights filed on March 26, 2021.

¶ 35                                II. ANALYSIS

¶ 36        On appeal, respondent challenges the trial court's fitness finding as well as its decision to terminate her parental rights. First, respondent contends that the State failed to meet its burden in proving her parental unfitness. The State must prove parental unfitness by clear and convincing evidence, and the trial court's findings must be given great deference because of its superior opportunity to observe the witnesses and evaluate their credibility. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004). We will not reverse a trial court's finding of parental unfitness unless it was contrary to the manifest weight of the evidence. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). A finding of parental unfitness may be based on evidence sufficient to support any one statutory ground. *In re D.D.*, 196 Ill. 2d 405, 422 (2001).

¶ 37        In its petition, the State argued that respondent was unfit based on her failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.[2] A parent may be found unfit for "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2018). In determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for a minor's welfare, a court considers the parent's efforts to visit and maintain contact with the child as well as other indicia,

_____

[2]The State also alleged respondent was unfit for failing to make reasonable progress toward the goal of reunification. Although respondent challenges this on appeal, we need not address respondent's argument on this issue. A finding that any one allegation has been proven by clear and convincing evidence is sufficient to sustain a parental unfitness finding on review. *In re D.H.*, 323 Ill. App. 3d 1, 9 (2001).

such as inquiries into the child's welfare. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). Completion of service plans may also be considered evidence of a parent's interest, concern, or responsibility. *Id.* at 1065; *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000). The court must focus on the parent's efforts, not their success. *In re Adoption of Syck*, 138 Ill. 2d 255, 279 (1990). In this regard, the court examines the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred. *Id.* at 278. Accordingly, circumstances such as difficulty in obtaining transportation, poverty, actions, and statements of others that hinder visitation, and the need to resolve other life issues are relevant. *Id.* at 278-79. Furthermore, if personal visits with the child are somehow impractical, other methods of communication such as letters, telephone calls, and gifts, may demonstrate a reasonable degree of interest, concern, or responsibility, "depending upon the content, tone, and frequency of those contacts under the circumstances." *Id.* at 279. We are mindful, however, that a parent is not fit merely because he or she has demonstrated some interest or affection toward the child. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). Rather, the interest, concern, or responsibility must be objectively reasonable. *In re Daphnie E.*, 368 Ill. App. 3d at 1064.

¶ 38    Upon review, we find that the trial court correctly found that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. The case began when respondent's newborn son tested positive for the presence of cocaine. The service plan required respondent to submit to regular drug testing. Respondent made almost no effort to comply with this requirement. Over the course of the case, respondent failed to appear for almost all of the required drug tests. Although the few tests she took showed negative results, some of those tests showed the presence of cocaine and marijuana. More importantly, the drug screening she took just before the fitness hearing tested positive for the presence of cocaine. The service plan required

- 11 -

respondent to participate in a substance abuse evaluation. Respondent obtained an evaluation, but the evaluation took place more than a year after she was ordered to obtain the evaluation. In short, respondent made no effort to address or comply with her substance abuse problems. Respondent also demonstrated little to no interest in the wellbeing of her children. She was allowed weekly visits for some time, but she arrived late for most of the visits. Then she rarely attended the visits at all. Respondent also testified that she did not call the children. Additionally, the reports submitted by the agencies show that respondent failed to communicate with the caseworkers. Under these circumstances, respondent failed to maintain a reasonable degree of interest in the children's welfare. Therefore, the trial court did not err when it found her unfit.

¶ 39 In reaching this conclusion, we reject respondent's argument that the evidence is insufficient because the State's only witness, Michelle States, served as the caseworker from October 2020 through the time of the hearing on the petition to terminate respondent's parental rights. According to respondent, States could not testify to any events occurring prior to her role in the case since she lacked firsthand knowledge of the prior events. Additionally, respondent argues that the State never asked the court to take judicial notice of the prior reports and court filings.

¶ 40 While it is true that the State never specifically asked the court to take judicial notice of the reports filed by the agencies, the GAL specifically asked the court to adopt and consider those reports for an accurate depiction of respondent's compliance with the service plan. Respondent never objected to this request. Thus, the court could properly rely on those reports. For this reason, we also reject respondent's reliance on *In re J.O.*, 2021 IL App (3d) 210248. In that case, this court reversed a finding of unfitness based on the fact that a caseworker testified to events that occurred before she assumed the role of the caseworker. This court noted that the caseworker's testimony

- 12 -

as to those facts contained a "notable lack of specificity." *Id.* ¶ 39. This court criticized the State's failure to ask it to take judicial notice of the prior reports filed in the case. *Id.* Unlike *J.O.*, the GAL specifically asked the court to adopt and consider the reports previously filed in the case. Consequently, *J.O.* is distinguishable.

¶ 41    Moreover, even if we assume that the court did not properly take judicial notice of those reports, respondent suffered no prejudice. The testimony of States and respondent are sufficient to show that respondent failed to maintain a reasonable degree of responsibility, interest, or concern for the wellbeing of her children.

¶ 42    Next, respondent contends that the trial court erred when it found that the best interests of the children were furthered by terminating her parental rights. A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 43    At the best-interests phase, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination is in the best interest of a minor. *Id.* at 366; *In re Deandre D.*, 405 Ill. App. 3d 945, 953 (2010). Section 1-3(4.05) of the Juvenile Court Act of 1987 sets forth various factors for the trial court to consider in assessing a minor's best interest. These considerations include: (1) the minor's physical safety and welfare; (2) the development of the minor's identity; (3) the minor's familial, cultural, and religious background; (4) the minor's sense of attachment, including love,

security, familiarity, and continuity of relationships with parental figures; (5) the minor's wishes and goals; (6) community ties; (7) the minor's need for permanence; (8) the uniqueness of every family and every child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. 705 ILCS 405/1-3(4.05) (West 2020).

¶ 44     We find the statutory factors favor a finding that terminating respondent's parental rights furthered the children's best interests. The children were in their foster placement since December of 2019. The foster parents (great uncle and aunt), provided for the physical safety and welfare of the children, including food, shelter, clothing, and healthcare. The children were happy in their foster home and shared a strong bond with their foster parents. The children attended church with their foster parents and volunteered at the community garden. Although the evidence conflicted regarding the children's desires, their need for permanency is fulfilled by their foster parents. By contrast, there is no evidence that respondent will address her substance abuse problems or provide a stable living environment for her children. Given her failure to visit the children consistently, there is no evidence that respondent would be able to consistently care for her children. While the foster mother has not yet been cleared to adopt the children due to her 30-year-old conviction, this factor does not outweigh the other factors favoring termination of respondent's parental rights. Consequently, we cannot say the trial court's decision to terminate respondent's parental rights was against the manifest weight of the evidence.

¶ 45                                III. CONCLUSION

¶ 46     For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 47     Affirmed.